No. 25-2798

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

STATE OF ILLINOIS, et al.,
    *Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States,* et al.,
    *Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Illinois

# REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
J. KAIN DAY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7517*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-2689*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 3

I.     This Court has appellate jurisdiction. ...................................................... 3

II.    The federal government is likely to prevail on the merits ..................... 4

II.    The other stay factors strongly favor the government. .......................... 9

CONCLUSION ..................................................................................................... 11

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                           **Page(s)**

*Abbott v. Perez,*
   585 U.S. 579 (2018) ............................................................................................ 4

*Cheney v. U.S. Dist. Court for D.C.,*
   542 U.S. 367 (2004) ............................................................................................ 4

*Department of Education v. California,*
   604 U.S. 650 (2025) ............................................................................................ 4

*Martin v. Mott,*
   25 U.S. (12 Wheat.) 19 (1827) ..................................................................... 4, 5, 8

*Newsom v. Trump,*
   141 F.4th 1032 (9th Cir. 2025) ..................................................................... 2, 5, 9

*Trump v. Hawaii,*
   585 U.S. 667 (2018) ............................................................................................ 7

*United States v. Texas,*
   599 U.S. 670 (2023) .......................................................................................... 10

**Federal Statutes:**

10 U.S.C. § 12406 ................................................................................... *passim*

10 U.S.C. § 12406(3) ........................................................................................... 2

**Other Authorities:**

Jennifer K. Elsea, Cong. Rsch. Serv., R42659, *The Posse Comitatus
   Act and Related Matters: The Use of the Military to Execute Civilian
   Law* (2018) .......................................................................................................... 8

*The Strike That Stunned the Country*, TIME (Mar. 30, 1970),
   https://perma.cc/X5E6-QN9Y ............................................................................. 5

# INTRODUCTION

The district court's order countermands the President's military decision to federalize and deploy troops to protect federal personnel and property—a decision that was plainly lawful under Section 12406. This usurpation was unprecedented in American history, at least until the last several months, and the district court's order should be stayed given the real danger posed to federal officials and property. Neither plaintiffs nor the district court can second-guess the President's determination.

In the weeks leading up to the federalization decision, federal officers have come "under coordinated assault by violent groups intent on obstructing lawful federal enforcement actions." A159-161. Outside of the U.S. Immigration and Customs Enforcement (ICE) facility in Broadview, organized agitators—several of whom were later found with handguns—have attacked and seriously injured federal officers with fireworks, rocks, bottles, and tear gas. A182-200. Rioters have routinely followed, surrounded, and rammed government vehicles—in one case engaging in a choreographed attack with ten cars during which one assailant tried to run down federal officers with her vehicle. A208-210. Rioters have blocked and swarmed government vehicles as they enter and exit ICE facilities, slashing their tires and trapping federal personnel inside. A182, A206-207. ICE officers have been followed home from work and aggressively confronted. A179. Other federal personnel have been subjected to death threats on social media. A176, A179, A190. Requests for assistance from local police resulted in no concrete actions or were ignored. A180-

181, A208-209. As a result, DHS and other agencies have been forced to reassign large numbers of additional federal officers to support the protection of the ICE facility and its occupants, significantly impeding their ability to perform their own regular law enforcement functions. A190-191, A210, A212.

Responding to this violence, and to ease the significant strain that violence has placed on federal law enforcement, the President federalized members of the Illinois National Guard to help protect federal personnel and property. That determination, if judicially reviewable, was surely within the "range of honest judgment" that the conditions in 10 U.S.C. § 12406 were satisfied. *Newsom v. Trump*, 141 F.4th 1032, 1048 (9th Cir. 2025). The district court overstepped its role in concluding otherwise and enjoining the President from calling up the National Guard to protect federal personnel and property in Illinois from further violence.

Plaintiffs cannot overcome this conclusion and instead double-down on many of the most troubling aspects of the district court's decision. For example, they adopt the district court's strained understanding of what it means to be "unable to execute the laws," suggesting the President must be wholly incapable of enforcing the laws—and even that it must be all laws, not some subset—for this clause to be triggered. Section 12406(3) "cannot plausibly be read" that narrowly, as the Ninth Circuit has recognized, and such a construction would be inconsistent with President Nixon's invocation of Section 12406 to deliver the mail. *See Newsom*, 141 F.4th at 1051. Worse still, plaintiffs defend the district court's categorical discrediting of defendants'

2

evidence—without so much as acknowledging that the district court relied on materials "outside the record" to reach this conclusion and that plaintiffs' own evidence shows the dire situation in Chicago. Finally, plaintiffs go even beyond what the district court was willing to conclude, suggesting the President's Section 12406 determination must take a specific form and include precise incantations. Nothing in the statute requires such a procedure, and it would be inconsistent with longstanding caselaw affording the President a presumption of regularity. For all these reasons, and those expressed in defendants' stay motion, defendants are likely to succeed on appeal.

The equitable factors also favor a stay. The district court's order improperly impinges on the Commander in Chief's supervision of military operations, countermands a military directive to officers in the field, and endangers federal personnel and property. On the other side of the ledger, plaintiffs cannot muster any irreparable harm—offering only conclusory allegations of speculative harm.

## ARGUMENT

### I. This Court has appellate jurisdiction.

Plaintiffs do not contest the key facts that establish this Court's jurisdiction. The district court entered a fully reasoned 51-page decision, after extensive briefing and argument. *See* A222-272. Moreover, as detailed in the defendants' stay motion, defendants strongly challenge the basis for the district court's injunction—which is unlawful and will inflict irreparable injury if allowed to stand. In short, the district

court's order has all the hallmarks of an injunction. *See Abbott v. Perez*, 585 U.S. 579, 594 (2018); *Department of Education v. California*, 604 U.S. 650, 651 (2025). The fact that the district court promptly issued an order that expires automatically does not suggest otherwise, *contra* Opp.3, nor can plaintiffs' outdated precedents overcome the Supreme Court's recent pronouncements, *see id* (citing pre-*Abbott* decisions). Indeed, the Supreme Court has itself construed an order as an appealable preliminary injunction despite that order's impending expiration. *See Department of Education*, 604 U.S. at 651.[1]

## II. The federal government is likely to prevail on the merits.

**A.** The Constitution and Congress have vested in the President the decision to call up the National Guard to protect federal personnel and federal property. As the Supreme Court held two hundred years ago, "the authority to decide whether [an] exigency has arisen[]" justifying the federalization of the militia "belongs exclusively to the President," whose judgment is "conclusive upon all other persons." *Martin v. Mott*, 25 U.S. (12 Wheat.) 19, 30 (1827). That holding governs here and precludes plaintiffs' and the district court's efforts to second-guess the President's judgment. This straightforward issue of statutory interpretation does not implicate the scope of

---

[1] The Court may also construe this appeal as seeking mandamus relief. While the Court has "declined to construe" certain appeals as seeking mandamus relief, none of those cases involved the extraordinary intrusion on the President's military judgment at issue here, which warrants this Court's immediate review. Mot.9-10 (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)).

4

"justiciable" controversies, as plaintiffs (Opp.12) and the district court mistakenly suggest (A247). And as explained (Mot.12), neither the facts underlying the *Martin* decision nor subsequent precedent undermine the Supreme Court's clear holding in that case.

**B.** Even if some judicial review of the President's federalization decision is available, plaintiffs acknowledge that review must be especially deferential. Opp.17 (quoting *Newsom v. Trump*, 141 F.4th 1032, 1051 (9th Cir. 2025) (per curiam)). The only question should be whether the President's decision reflects "a colorable assessment of the facts and law within a 'range of honest judgment.'" *Id.* To be sure, plaintiffs adopt the district court's binary understanding of the statutory phrase "unable to execute the laws," *see* Opp.15, arguing that phrase requires a complete inability to enforce the laws, A256-257. But they do not engage with the numerous problems that foreclose that interpretation, which is implausible and inconsistent with the historical record. Mot.15 (citing *See The Strike That Stunned the Country*, TIME (Mar. 30, 1970), https://perma.cc/X5E6-QN9Y). Notably, plaintiffs make no effort to defend the district court's untenable interpretation of the "regular forces." *See* Mot.15-16 (citing A256).

The President's decision to invoke Section 12406 to federalize National Guard members in Chicago is amply supported by facts in the record, as the federal government explained. *E.g.*, Mot.4-8, 14. In the weeks leading up to the federalization decision, federal officers have come "under coordinated assault by

5

violent groups intent on obstructing lawful federal enforcement actions." A159-161. Rioters have attacked officers with fireworks, rocks, bottles, and tear gas, A182-200; used their cars as weapons, A208-210; blocked access to ICE facilities, A182, A206-207; followed officers home, A179; and harassed officers online, A176, A179, A190. Some of these rioters have carried firearms, A182-200, and criminal gangs have even offered a bounty for the murder of senior officials. A179. This violence has put a significant strain on federal law enforcement resources, A190-191, A210, A212, and requests for assistance from local police resulted in no concrete actions or were ignored. A180-181, A208-209. It is this inability of *federal* forces to execute the laws, not the refusal of local authorities to assist in civil immigration enforcement, that justified the President's federalization decision. *Contra* Opp.15.

Plaintiffs ignore this evidence, instead citing their own declarations and relying on the district court's unsupported "credibility assessment." Opp.5-7, 15-19. As explained, the district court categorically dismissed defendants' evidence based on an improper *ex parte* factual investigation and an adverse "credibility" finding that had no basis in the record. *See* Mot.17-18. Indeed, it strains credulity to suggest the district court "*did* afford deference to the President's factual determinations," Opp.17, when the court appears to have conducted its own investigation of facts "outside of the record in this case," A374. Plaintiffs do not defend the district court's reliance on extra-record materials, and that alone is sufficient to establish a likelihood of success on the merits. After setting aside its flawed credibility determination, the district court

6

itself recognized that defendants' declarations detail "organized, repeated, violent, and increasingly hostile attacks on ICE agents, their personal property, and ICE property" that amount to "an opposition to immigration law enforcement and immigration policy." *Cf.* A255 n.14. Accordingly, those declarations amply justify the President's federalization decision.

Even if the district court's analysis were not legally flawed, it does not paint an accurate picture of the facts. Plaintiffs' declarations confirm the seriousness of violence in Chicago, A110, A133, A218, and a few isolated indictment decisions and references to protesters' chants are plainly insufficient for a court to discount extensive and well-supported declaration evidence, *contra* Opp.17-18. To some extent, federal forces have been able to execute the immigration laws and the laws protecting federal personnel and property from harm. *See* Opp.15-16. But the President has determined that ongoing violence against federal officers and property is significantly inhibiting the ability of federal forces to execute those laws, thereby justifying federalization of the Guard. That is all the statute requires.

Plaintiffs suggest the President acted in bad faith, Opp.17-18, but no record evidence supports that conclusion, and reliance on extra-record materials to second-guess the President's motive is improper. *See Trump v. Hawaii*, 585 U.S. 667, 703 (2018). Plaintiffs' supposition that the National Guardsmen were deployed in Illinois to "control 'crime in Chicago'" is flatly at odds with the President's federalization order, which directs the federalization and deployment of Illinois National Guard

7

members to protect "ICE, FPS, and other United States Government personnel who are executing Federal law in the State of Illinois, and Federal property in the State of Illinois." A161. Of course, the National Guard's protective activities may prevent the commission of federal crimes against federal personnel and property, but that does not transform their protective mission into a crime-fighting one.

Plaintiffs also cannot manufacture procedural defects in the President's judgment, Opp.13, and even the district court did not reach such a conclusion. Nothing in the statutory text requires "an official document" that "identif[ies] a specific predicate justification" for the President's federalization decision. *See* Opp.13. Nor must the President call out every federal law that cannot be enforced with the regular forces. Opp.14-15. To the contrary, it is settled that "[w]hen the President exercises an authority confided to him by law, the presumption [is] that it is exercised in pursuance of law." *Martin*, 25 U.S. (12 Wheat.) at 32-33. "It is not necessary to aver, that the act which he may rightfully do, was so done." *Id.* at 33.

Finally, plaintiffs attempt to bolster their arguments with the same flawed interpretation of "rebellion" that the district court adopted. Opp.14. In doing so, plaintiffs identify no dictionary definition of the term "rebellion" that requires an intent to overthrow the entire government, and they fail to respond to the historical context that informs the meaning of that term. *See* Mot.16-17 (citing Jennifer K. Elsea, Cong. Rsch. Serv., R42659, *The Posse Comitatus Act and Related Matters: The Use of the Military to Execute Civilian Law* 9-12, 35-38 (2018)). Section 12406 can trace its

8

lineage to the Whiskey Rebellion, a protest targeted at a specific tax, so "rebellion" cannot be limited to efforts to overthrow the government as a whole.

**B.** The federalization order is also consistent with the Tenth Amendment. Plaintiffs acknowledge that their Tenth Amendment claim is largely derivative of their statutory claim, Opp.19; it accordingly fails for the same reasons. *See supra* pp. 4-9.

Moreover, nothing about the President's actions presents Illinois with an impermissibly coercive choice. The President merely recognized that, if the State took actions to "protect" federal personnel and property, federalization of the Guard would not be necessary. *See* A161. Troublingly, plaintiffs misrepresent the contents of the President's October 4 memorandum. They suggest the President asked the Illinois National Guard to "assist federal law enforcement with 'deportation and removal' of immigrants," Opp.19. But the quoted language has nothing to do with the Guard's mission, and the document plaintiffs cite—one of their own declarations—confirms the Guard's protective mission. ECF 13-2 at 5-7. Likewise, the President did not federalize the Guardsmen to "assist any federal agency on any federal mission," Opp.2, as distinguished from providing protective services.

**II.     The other stay factors strongly favor the government.**

In staying the Los Angeles injunction, the Ninth Circuit recognized that the federal government has "an uncontested interest in the protection of federal agents and property and the faithful execution of law" and that threats directed at federal personnel and property harm that interest. *Newsom*, 141 F.4th at 1054. The federal

9

government also suffers irreparable harm when its immigration officials are prevented from safely and successfully enforcing the law. The court's suggestion that the federal government can deploy more law enforcement officers to protect its personnel and property ignores the evidence that those officers are already overstretched and inappropriately second-guesses the President's judgments about limited Executive Branch resources, *cf. United States v. Texas*, 599 U.S. 670, 680 (2023).

On the other side of the ledger, plaintiffs have not established any irreparable injury that warrants extraordinary relief. Nothing about the National Guard's protective mission implicates Illinois's interest in "regulating and overseeing its own law enforcement activities" or its interest in allocating state "law enforcement resources." Opp.20. Protecting federal personnel and property is not enforcing state law, *i.e.*, the only law that plaintiffs have an interest in effectuating, and it is speculative to suggest federalization hampers Illinois's ability to deploy its Guard. Likewise, there is no basis for plaintiffs' speculation that deployment of the Guard will "escalate" tensions or that any increase in protest activity is attributable to that federalization, as opposed to the accompanying increase in the federal government's ability to enforce the immigration laws. *Contra* Opp.20. Nor should the Court give any weight in the equitable balancing to the possibility that third parties may respond to the deployment of the National Guard by escalating their violence and other unlawful activities. Doing so would be inequitable and dangerous, as it would essentially create a judicially endorsed rioters' veto over the President's ability to protect federal personnel and

property and ensure faithful execution of federal law in the face of ongoing violence and threats of violence aimed at thwarting enforcement of federal law.

## CONCLUSION

The Court should stay the district court's order pending appeal and should grant an immediate administrative stay of the President's deployment of the National Guard in Illinois pending consideration of the motion.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE

<u>/s/ J. Kain Day</u>
J. KAIN DAY
*Attorneys, Appellate Staff*
*Civil Division, Room 7517*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-2689*
*Sharon.swingle@usdoj.gov*

October 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,539 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ *J. Kain Day*
J. KAIN DAY

# CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system on all counsel of record.

                                        */s/ J. Kain Day*
                                        J. KAIN DAY