No. 25-2798

# In the United States Court of Appeals for the Seventh Circuit

STATE OF ILLINOIS and CITY OF CHICAGO,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

*Defendants-Appellants*.

*On Appeal from the United States District Court
for the Northern District of Illinois*

## BRIEF OF CONSTITUTIONAL ACCOUNTABILITY CENTER
## AS *AMICUS CURIAE* IN OPPOSITION TO APPELLANTS'
## MOTION FOR A STAY PENDING APPEAL

Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
CONSTITUTIONAL
    ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW, Suite 1200
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iv

INTEREST OF *AMICUS CURIAE* ...................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

ARGUMENT .................................................................................... 4

    I.    *Martin v. Mott* Does Not Foreclose Judicial Review of Decisions
        to Federalize the National Guard or Require Excessive Deference
        to the President................................................................... 4

        A.    *Mott*'s Historical Context ............................................ 4

        B.    *Mott*'s Procedural Context............................................ 6

        C.    *Mott*'s Holding and Reasoning ..................................... 7

    II.    Subsequent Decisions Citing *Mott* Do Not Help Defendants .............. 11

CONCLUSION ................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Cohens v. Virginia*,
    19 U.S. 264 (1821) ................................................................. 2, 3

*Dalton v. Specter*,
    511 U.S. 462 (1994) ................................................................. 11

*Dynes v. Hoover*,
    61 U.S. 65 (1857) ..................................................................... 7

*Little v. Barreme*,
    6 U.S. 170 (1804) ..................................................................... 7

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ................................................................. 4

*Luther v. Borden*,
    48 U.S. 1 (1849) ....................................................................... 11

*Mallory v. Norfolk S. Ry. Co.*,
    600 U.S. 122 (2023) ................................................................. 3

*Marbury v. Madison*,
    5 U.S. 137 (1803) ..................................................................... 4

*Martin v. Mott*,
    25 U.S. 19 (1827) ................................................. 1, 2, 6, 7, 8, 9, 10, 11

*Newsom v. Trump*,
    141 F.4th 1032 (9th Cir. 2025) ............................................... 1

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ................................................................. 3

*Opinion of the Justices*,
    8 Mass. 548 (1812) ................................................................. 5

*Sterling v. Constantin*,
    287 U.S. 378 (1932) ................................................................. 11

*United States v. George S. Bush & Co.*,
    310 U.S. 371 (1940) ................................................................. 11

# TABLE OF AUTHORITIES – cont'd

**Page(s)**

*Vanderheyden v. Young*,
   11 Johns. 150 (N.Y. 1814) ........................................................ 8

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ................................................................. 3

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ................................................................. 3

*Zivotofsky v. Clinton*,
   566 U.S. 189 (2012) ................................................................. 1


<u>Statutes and Constitutional Provisions</u>

Act of Feb. 28, 1795, ch. 36, 1 Stat. 424 .................................... 6

10 U.S.C. § 12406 ........................................................................ 1

U.S. Const. art. I, § 8, cl. 15 ....................................................... 1


<u>Books, Articles, and Other Materials</u>

William Blackstone, *Commentaries on the Laws of England* (1766) ........ 6

Marcus Cunliffe, *Soldiers and Civilians: The Martial Spirit in America*
   (1968) ..................................................................................... 4

James Kent, *Commentaries on American Law* (1840) .............................. 4, 5

Joseph Story, *Commentaries on the Constitution of the United States*
   (1833) ..................................................................................... 5

Frederick Bernays Wiener, *The Militia Clause of the Constitution*,
   54 Harv. L. Rev. 181 (1940) .................................................... 4

## INTEREST OF *AMICUS CURIAE*[1]

Constitutional Accountability Center is a think tank and public interest law firm dedicated to fulfilling the progressive promise of the Constitution's text and history.  CAC works to protect the rights, freedoms, and structural safeguards the Constitution guarantees.  Accordingly, CAC has an interest in this case.

## INTRODUCTION AND
## SUMMARY OF ARGUMENT

Exercising its exclusive authority to "provide for calling forth the Militia," U.S. Const. art. I, § 8, cl. 15, Congress chose specific criteria to govern when presidents may call the National Guard into federal service.  *See* 10 U.S.C. § 12406.  Interpreting statutes like this "is what courts do."  *Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012).  Nothing in *Martin v. Mott*, 25 U.S. 19 (1827), precludes judicial review of whether Congress's criteria are satisfied, or requires the extreme deference applied in *Newsom v. Trump*, 141 F.4th 1032 (9th Cir. 2025).

*Mott* resolved only a narrow question: may a servicemember escape punishment for defying a presidential order by suing the officers tasked with carrying out that punishment—and requiring them to establish the soundness of the President's order?  Answering no, *Mott* held that a militia member could not use a

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amicus* or its counsel made a monetary contribution to its preparation or submission.  All parties have consented to this filing.

1

common law suit to relitigate his court-martial by challenging the validity of the order he disobeyed. The opinion focused entirely on preserving the military chain of command and protecting officers who carried out orders from "ruinous litigation." 25 U.S. at 31.

*Mott* therefore settled the question of who decides "in the first instance," *id.*, whether the criteria in statutes like § 12406 are satisfied, holding that officers below the President could not decide for themselves if the conditions for calling up the militia were present. That question was hotly debated during the War of 1812, when Mott failed to serve. During that conflict, individual states frustrated the war effort by claiming that their own state militia commanders, not the President, were the arbiters of whether an "invasion" had occurred within the meaning of the militia statute. *Mott* was understood as resolving *that* dispute. Indeed, this is how *Mott*'s author, Joseph Story, characterized the decision in his *Commentaries*.

Read in context, all of *Mott*'s broad-sounding passages are focused on whether disagreement with presidential assessments can justify defiance by lower-level officers. *Mott* did not establish any broad rule barring the *judiciary*, in a proper case, from evaluating the legality of presidential orders under laws like the militia statute. And "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." *Cohens v. Virginia*,

19 U.S. 264, 399 (1821). If they "go beyond the case," they do not "control the judgment in a subsequent suit when the very point is presented for decision." *Id.*

Importantly, an inability to use civil liability to challenge official decisions, as in *Mott*, does not prevent courts from granting prospective relief. *Compare Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982) (no damages liability for a President's official actions), *with Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 583 (1952) (enjoining implementation of presidential orders). Whether "monetary and other liabilities should be imposed upon individual officers" raises different questions than whether "equitable remedies" are warranted. *Ziglar v. Abbasi*, 582 U.S. 120, 134, 136 (2017).

Over the past two centuries, the sparse precedent discussing *Mott* has not transformed it into a barrier against judicial review whenever statutes give conditional authority to presidents. The few opinions addressing *Mott* in any depth are as inapplicable here as *Mott* itself.

In sum, while courts are bound by precedent that "directly controls," *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023), even if its reasoning has eroded, *Mott* does not directly control here. Plaintiffs have not disobeyed the President's orders. They do not argue that they can decide in the first instance whether § 12406's conditions are satisfied. They are not trying to hold anyone civilly liable. They are simply asking the judiciary to "interpret the act of

3

Congress, in order to ascertain the rights of the parties," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citation omitted), and "say what the law is," *id.* (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)).

## ARGUMENT

### I. *Martin v. Mott* Does Not Foreclose Judicial Review of Decisions to Federalize the National Guard or Require Excessive Deference to the President.

#### A. *Mott*'s Historical Context

During the War of 1812, much of the country "was in virtual revolt against the general government." Frederick Bernays Wiener, *The Militia Clause of the Constitution*, 54 Harv. L. Rev. 181, 188 (1940). "[T]he authority of the president … over the militia became a subject of doubt and difficulty, and of a collision of opinion between the general government and the governments of some of the states." 1 James Kent, *Commentaries on American Law* 262 (1840). In defiance of President Madison, "[t]he governors of Massachusetts and Connecticut refused to call out their militia in the federal service." Marcus Cunliffe, *Soldiers and Civilians: The Martial Spirit in America* 185 (1968). New York and Rhode Island would not allow their militias to leave their states. Wiener, *supra*, at 189.

Massachusetts's governor even obtained judicial support for his view that state leaders could decide independently whether an "invasion" had occurred triggering authority to call up the militia. He asked the Massachusetts supreme

court to declare if state militia commanders had "a right to determine whether any of the exigencies aforesaid exist, so as to require them to place the militia … in the service of the United States, at the request of the president." *Opinion of the Justices*, 8 Mass. 548, 549 (1812).  The court concluded that state officials had the power to decide, "without reference to the … officers of the United States," whether "the special cases exist, obliging them … to render themselves and the militia subject to the command of the president." *Id.*  Madison staunchly disagreed.

    "These embarrassing questions … remained unsettled by the proper and final decision of the tribunal that is competent to put them to rest, until the case of *Martin v. Mott*." Kent, *supra*, at 265.  As Joseph Story explained, the war provoked disagreement about whether "the governors of the states, to whom orders were addressed by the president to call forth the militia on account of danger of invasion, were entitled to judge for themselves, whether the exigency had arisen; and were not bound by the opinion or orders of the president." 3 *Commentaries on the Constitution of the United States* 90 (1833).  "This question was much agitated during the late war with Great Britain," but *Mott* "determined, that the authority to decide, whether the exigency has arisen, belongs exclusively to the president." *Id.*

### B.    *Mott*'s Procedural Context

*Mott*'s scope was shaped by the form of action in which it arose.  It addressed whether servicemembers could use common law suits to escape the consequences of federal military dereliction.  It answered "no" based on the serious harm to the national defense that would otherwise follow.  *Mott* contains no sweeping announcement that courts may never evaluate the legality of presidential decisions under the militia statute.

Instead, *Mott* focuses on who the militia statute empowered, "in the first instance," 25 U.S. at 31, to decide whether its preconditions were satisfied.  President Madison requisitioned state militia troops under the precursor to § 12406, which applied "whenever the United States shall be invaded, or be in imminent danger of invasion from any foreign nation."  Act of Feb. 28, 1795, ch. 36, § 1, 1 Stat. 424.  New York's governor ordered state militia members into federal service, but Mott (and others) failed to comply.  After a court-martial was convened, Mott was convicted and fined.  When he did not pay, a federal marshal, Martin, was ordered to seize his property.  *Mott*, 25 U.S. at 20-22.

Mott then brought a replevin action against Martin in New York court.  Replevin enabled plaintiffs to secure the return of personal property wrongly taken and to obtain damages.  *See* 3 William Blackstone, *Commentaries on the Laws of England* 149-50 (1766).  Martin responded that the seizure was justified.  Mott

demurred—challenging the sufficiency of Martin's allegations on several grounds. The Supreme Court's opinion is structured around the arguments in Mott's demurrer.

Mott's main contention was that Martin's response failed to allege that the militia statute's preconditions were satisfied—that "any of the exigencies had occurred, in which the President is empowered to call out the militia." 25 U.S. at 23. He argued it was "necessary [for Martin] to aver the facts which bring the exercise [of the President's power] within the purview of the statute." *Id.* at 32.

### C.    *Mott*'s Holding and Reasoning

Rejecting Mott's argument, the Court held that Martin need not show that the militia statute's conditions were satisfied. If the basis for the President's order could be contested in a common law suit, a state-court jury would resolve that fact dispute, "and thus the legality of the orders of the President would depend, not on his own judgment of the facts, but upon the finding of those facts upon the proofs submitted to a jury." *Id.* at 33.

Significantly, officers who implemented unlawful presidential orders had no immunity from damages in this era. *Little v. Barreme*, 6 U.S. 170, 170-71 (1804); *cf. Dynes v. Hoover*, 61 U.S. 65, 78-84 (1857) (federal marshals who executed court-martial sentences did so under the President's military authority). So if juries could reevaluate presidential assessments and invalidate orders calling up the

militia, then "any act done by any person in furtherance of such orders would subject him to responsibility in a civil suit, in which his defence must finally rest upon his ability to establish the facts by competent proofs." *Mott*, 25 U.S. at 30. "Such a course would be subversive of all discipline, and expose the best disposed officers to the chances of ruinous litigation." *Id.* at 30-31.

*Mott* repeatedly endorsed another decision that rested on the same chain-of-command concerns. In *Vanderheyden v. Young*, 11 Johns. 150 (N.Y. 1814), the court rejected a false arrest suit against a court-martial official, brought by a militia member who was imprisoned for desertion. As in *Mott*, the plaintiff objected that the defendant failed to show that the nation was actually in danger of invasion. And as in *Mott*, that showing was held unnecessary. Otherwise, "every subordinate officer, who should be called into service, would be put to the necessity, when he was sued for any act of discipline upon the privates, to prove to a jury that the president had acted correctly in making his requisitions; and if he failed in this proof, it would subject him to damages." *Id.* at 158. The court rejected this "monstrous" result: "No man would dare to obey the orders, either of the president, or of his superior officer, lest, peradventure, the president had either abused his authority, or misjudged." *Id.* This "would be subversive of all discipline" and have "fatal" national-security consequences. *Id.*

8

*Mott* adopted this reasoning.  It prevented officers who disobeyed orders from suing officers who obeyed orders, because entertaining those suits would undermine military discipline and the national defense.  Subordinates could defy presidential orders based on their own judgment of the facts, and no officers would be safe carrying out such orders, because a presidential misjudgment would expose them to "ruinous litigation."  25 U.S. at 31.

This is why, in Mott's replevin action, the President's order was "conclusive as to the existence of the exigency, and may be given in evidence as conclusive proof thereof."  *Id.* at 32.  The Court did not hold such presidential orders exempt from every form of judicial relief in every context.  Indeed, *Mott* observed that the President's discretion was "confined to cases of actual invasion, or of imminent danger of invasion."  *Id.* at 29.

*Mott*'s concerns about civil liability disrupting the chain of command were thus central to the entire decision—not simply a reflection of different facts.  All of *Mott*'s broad-sounding passages, in context, focus on these concerns.  For example, *Mott*'s statement that presidential decisions were "conclusive upon all other persons" referred not to judges, but to the military hierarchy:

> Is the President the sole and exclusive judge whether the exigency has arisen, *or is it to be considered as an open question, upon which every officer to whom the orders of the President are addressed, may decide for himself, and equally open to be contested by every militia-man who shall refuse to obey the orders of the President*?  We are all of opinion, that the authority to decide whether the exigency has

9

arisen, belongs exclusively to the President, and that his decision is
conclusive upon all other persons.

*Id.* at 29-30 (emphasis added); *accord id.* at 31 (using "any other person" to refer
to "a subordinate officer").

Further illustrating its chain-of-command focus, *Mott* reasoned that the
power to call up the militia "is to be exercised upon sudden emergencies … under
circumstances which may be vital to the existence of the Union," where an
"unhesitating obedience to orders is indispensable." *Id.* at 30. Every hindrance to
"immediate compliance" would "jeopard[ize] the public interests," because
"[w]hile subordinate officers or soldiers are pausing to consider whether they
ought to obey, or are scrupulously weighing the evidence of the facts … the hostile
enterprise may be accomplished without the means of resistance." *Id.*

In short, *Mott* addressed only whether "subordinate officers" in state militias
could decide if the conditions for calling up the militia were satisfied. The
*judiciary's* power vis-à-vis the President was simply not discussed.

This is the context in which *Mott* stated that the President's exercise of "his
own opinion of certain facts" made him "the sole and exclusive judge of the
existence of those facts." *Id.* at 31-32. Plaintiffs here seek a different form of
judicial relief in a different context that raises different questions. *Mott* does not
control.

10

**II.     Subsequent Decisions Citing *Mott* Do Not Help Defendants.**

In 200 years, *Mott* has generated little more than sporadic, peripheral

citations.  None justifies giving presidents free rein under § 12406.

The "very similar" case of *Luther v. Borden*, 48 U.S. 1, 44 (1849), also

rejected civil liability for officers who followed orders, due to the untenable

consequences of reevaluating those orders in common law suits.  Specifically,

*Luther* held that trespass suits could not be used to force the federal courts to

decide which of two rival state governments was legitimate.  *Id.* at 34-43.  None of

the considerations relied upon applies here.

Other decisions citing *Mott* have involved statutes with no standards limiting

presidential discretion.  *E.g.*, *United States v. George S. Bush & Co.*, 310 U.S. 371,

378-79 (1940) (because "no express provision" required any particular method for

tariff calculations, courts could not scrutinize "[t]he President's method of solving

the problem").  While standardless grants of discretion provide nothing for a court

to enforce, *Dalton v. Specter*, 511 U.S. 462, 476 (1994), a statute imposing specific

criteria, like § 12406, confers "in its terms, a limited power," *Mott*, 25 U.S. at 29.

*Sterling v. Constantin*, 287 U.S. 378 (1932), addressed a governor's

*constitutional* power to identify exigencies requiring military aid.  It grappled with

the nature of the vague, implied authority "to maintain peace."  *Id.* at 400.  It does

not support unbridled presidential authority to invoke statutory powers even when the conditions Congress has prescribed are absent.

## CONCLUSION

The stay motion should be denied.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Elizabeth B. Wydra*
Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
CONSTITUTIONAL ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW, Suite 1200
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org

*Counsel for Amicus Curiae*

</div>

Dated: October 12, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 29 and 27(d)(2) because it contains 2,600 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Executed this 12th day of October, 2025.

*/s/ Elizabeth B. Wydra*
Elizabeth B. Wydra

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of October, 2025, I electronically filed the foregoing document using the Court's Appellate Case Management System, causing a notice of filing to be served upon all counsel of record.

Dated: October 12, 2025

_/s/ Elizabeth B. Wydra_
Elizabeth B. Wydra