No. 25-2798

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

———————————————

STATE OF ILLINOIS, et al.,

*Plaintiffs-Appellees,*

*v.*

DONALD J. TRUMP, *in his official capacity as President of the United States*, et al.,

*Defendants-Appellants.*

———————————————

## BRIEF OF *AMICI CURIAE* LOCAL GOVERNMENTS AND LOCAL GOVERNMENT LEADERS IN SUPPORT OF APPELLEES' RESPONSE TO EMERGENCY MOTION FOR STAY PENDING APPEAL

———————————————

JENNY MA
JONATHAN MILLER
JEAN LARSEN
PUBLIC RIGHTS PROJECT
490 43rd Street, #115
Oakland, CA 94609
Telephone: (510) 738-6788

*Attorneys for Amici Curiae*

## TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................ 1

SUMMARY OF ARGUMENT .................................................. 3

ARGUMENT ........................................................... 6

I.   APPELLANTS   SEEK   TO   UNLAWFULLY
     UNLEASH   MILITARY   FORCES   WITHOUT
     FACTUAL   JUSTIFICATION   AND   UNDER
     PRETEXT THAT SEVERELY HARMS *AMICI* AND
     THE PUBLIC INTEREST. ........................................ 6

     A.   The Unlawful Federalization of the National
          Guard   Without   Justification   Irreparably
          Harms State and Local Sovereignty ........................ 7

     B.   The Public Interest Is Best Served When Local
          Law   Enforcement,   Not   Federalized   Military
          Forces, Exercise Their Police Powers to Ensure
          Public Safety and Manage Local Protests .............. 10

     C.   Actual and Threatened Militarization of Our
          Cities Disturbs Our Residents' Well-Being and
          Our Local Economies ................................... 15

CONCLUSION ....................................................... 19

ADDITIONAL COUNSEL ............................................... 20

Appendix A – List of *Amici Curiae* ......................... 24

# TABLE OF AUTHORITIES

### CASES

*Coyle v. Smith,*
221 U.S. 559 (1911)................................................................. 8

*Grider v. Abramson,*
180 F.3d 739 (6th Cir. 1999) ............................................. 11

*Hinrichs v. Bosma,*
440 F.3d 393 (7th Cir. 2006) ............................................... 6

*Laird v. Tatum,*
408 U.S. 1 (1972)..................................................................... 7

*Newsom v. Trump,*
786 F. Supp. 3d 1235 (N.D. Cal. 2025) .............................. 9

*Nken v. Holder,*
556 U.S. 418 (2009)................................................................. 6

*Printz v. United States,*
521 U.S. 898 (1997).............................................................. 10

*San Francisco v. Trump,*
897 F.3d 1225 (9th Cir. 2018) ............................................. 9

*San Francisco v. Trump,*
No. 3:25-cv-01350-WHO, 2025 WL 1282637
(N.D. Cal. May 3, 2025) ................................................ 9, 10

*Swain v. Junior,*
958 F.3d 1081 (11th Cir. 2020) ........................................ 15

*Ty, Inc. v. Jones Grp., Inc.,*
237 F.3d 891 (7th Cir. 2001) ............................................... 7

### STATUTES

10 U.S.C. § 12406 .................................................................... 9

## OTHER AUTHORITIES

Alex Horton, *National Guard Documents Show Public 'Fear,' Veterans 'Shame' Over D.C. Presence,* Wash. Post (Sept. 29, 2025) ........................................... 16

Andrea Sachs and Federica Cocco, *D.C. Tourism Was Already Struggling, Then the National Guard Arrived*, Wash. Post (Aug. 29, 2025) ................................ 17

Andrew Schwartz, *National Guard Deployment— Estimated Cost: $10 Million—Crawls Along*, Willamette Week (Oct. 1, 2025) ........................................ 19

City of New Haven, Press Release, *Statement by Mayor Elicker on Yale University Students Protests and Successful De-escalation by the New Haven Police Dep't* (Apr. 23, 2024) ........................................... 12

*D.C. v. Trump*, No. 25-civ-3005 (D.D.C. 2025), ECF 3-5, Schwalb Decl. ................................................... 17

Daniella Silva, *500 National Guard Troops Arrive in Chicago Area Amid Resistance from Illinois Governor*, NBC News (Oct. 8, 2025) ................................. 2

Demonstrations and Political Violence in America: New Data for Summer 2020, ACLED (Sept. 3, 2020) ............. 10

Ed White and Christopher L. Keller, *Trump's Push for More Troops in US Cities at Odds with Crime Stats*, Military Times (Aug. 29, 2025) ........................................ 16

*Immigration Raids and Military Presence Hurting Economy in Santa Ana, Employees Say*, ABC 7 (June 11, 2025) ........................................................................ 18

Josh Marcus, *Trump Mobilizing Up to 1,700 National Guard Troops in 19 States to Widen Crime and Immigration Crackdown*, The Independent (Aug. 25, 2025) ........................................................................ 2

Joshua Chapin, *Downtown DC Businesses Hope for Increased Foot Traffic After End To Federal Takeover*, ABC 7 News (Sept. 11, 2025) ............................................. 16

Marc Novicoff, *A Very, Very Expensive Way to Reduce Crime*, The Atlantic (Oct. 10, 2025) .............................. 5, 19

Matt Masterson, *National Guard Troops Have Arrived in Illinois. What's Their Directive and Where Might They Be Deployed?* WTTW (Oct. 8, 2025) ........................... 6

Max Harrison-Caldwell, *Trump Says He'll Send Troops to 'Clean Up' San Francisco*, The San Francisco Standard (Aug. 22, 2025) ...................................................... 1

Melody Gutierrez, *Trump's Military Deployment in L.A. Cost $120 Million, Newsom Says*, LA Times (Sept. 4, 2025) ................................................................................... 19

Memorandum for the Adjutant General, Texas National Guard, ECF 13-2, *Illinois v. Trump*, 1:25-cv-12174 (N.D. Ill. filed Oct. 6, 2025) ......................... 2

Milton Guevara, *How National Guard Troops in D.C. Are Affecting Restaurants in the Capital*, Nat'l Public Radio (Sept. 1, 2025)............................................................ 17

Mimi Montgomery, *Trump Crackdown is Affecting D.C.'s Image and Tourism Numbers*, Axios D.C. (Aug. 29, 2025) ................................................................................. 17

Noah Robertson, *LA Deployments to Cost $134 Million and Last 60 days, Pentagon Says,* Military Times (June 10, 2025)................................................................................. 19

Pittsburgh Bureau of Police Roadway Safety Guidelines (July 26, 2018)................................................................... 12

Sonja Sharp, *Trump Wants To Use U.S. Cities as Military 'Training Grounds.' Can Judges Stop Him?*, L.A. Times (Oct. 1, 2025)...................................................... 1

iv

The White House, *Additional Measures to Address the Crime Emergency in the District of Columbia* (Aug. 25, 2025) ............................................................... 2

*Trump Hints He Could Send National Guard to Oakland*, KTVU (Aug. 12, 2025) ......................................... 1

## STATEMENT OF INTEREST

*Amici curiae* are local governments and officials from across the Nation.[1] Their municipalities differ in size, demographics, and policy priorities, but share a common interest in keeping communities safe, protecting the First Amendment rights of their residents, and avoiding pretextual punishment by the Executive branch. Through decades of experience, *amici* have successfully deployed policies and practices that balance public safety needs with the rights of their residents.

The President has made plain his desire to treat American cities as "training grounds."[2] In just this past week, the President has federalized and attempted to deploy the National Guard into the City of Portland *twice*, while simultaneously attempting to do the same in and around

---

[1] All parties have consented to the filing of this brief. *See* Fed. R. Civ. P. 29(a)(2). No party or party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparation or submission of this brief. A list of all *amici* is provided at Appendix A.

[2] Sonja Sharp, *Trump Wants To Use U.S. Cities as Military 'Training Grounds.' Can Judges Stop Him?*, L.A. Times (Oct. 1, 2025), https://perma.cc/MMV3-G4SA; *see also* Max Harrison-Caldwell, *Trump Says He'll Send Troops to 'Clean Up' San Francisco*, The San Francisco Standard (Aug. 22, 2025), https://perma.cc/MS76-R5KR; *Trump Hints He Could Send National Guard to Oakland*, KTVU (Aug. 12, 2025), https://perma.cc/4LGY-5E6D (naming specific cities).

appellee City of Chicago. In these cities and others "where needed," the President sought to "immediately" deploy 400 members of the Texas National Guard.[3] Indeed, news reports suggest that over 500 National Guard members have already arrived at an Army Reserve Center, about an hour southwest of Chicago.[4] And plans are underway to deploy the National Guard to as many as nineteen States,[5] with an Executive Order instructing for further deployments.[6]

As in other jurisdictions, by federalizing the National Guard, appellants failed to meet statutory thresholds and trampled on the foundational principles forbidding federal military involvement in civilian law enforcement. *Amici* are gravely concerned that any protest within their borders will result in another unnecessary deployment of the

---

[3] *See* Memorandum for the Adjutant General, Texas National Guard, ECF 13-2 at 34, *Illinois v. Trump*, 1:25-cv-12174 (N.D. Ill. filed Oct. 6, 2025).

[4] Daniella Silva, *500 National Guard Troops Arrive in Chicago Area Amid Resistance from Illinois Governor*, NBC News (Oct. 8, 2025), https://perma.cc/FQ76-DCF4.

[5] Josh Marcus, *Trump Mobilizing Up to 1,700 National Guard Troops in 19 States to Widen Crime and Immigration Crackdown*, The Independent (Aug. 25, 2025), https://perma.cc/6U2S-KEP8.

[6] The White House, *Additional Measures to Address the Crime Emergency in the District of Columbia*, § 2(d)(ii) (Aug. 25, 2025), https://perma.cc/3AF2-QMQ4.

military. Not only does this harm *amici*'s interests and police powers, but it also disturbs *amici*'s interest in peace and tranquility, and in the well-being of our residents and our local economies.

*Amici* have a strong interest in ensuring that unnecessary deployments cease and that order to the rule of law is restored. *Amici* respectfully submit this brief in support of appellees' response to appellants' emergency motion for a stay pending appeal of the district court's temporary restraining order.

## SUMMARY OF ARGUMENT

Our Nation's constitutional order demands that federal military deployment for civilian law enforcement be restricted and that federal courts hold that line against Executive overreach. Federalizing and deploying the National Guard is a last resort, not a primary tactic, reserved for those exceedingly rare instances of foreign invasion, violent rebellion, or where local resources are so completely overwhelmed as to be unable to execute the laws.

Yet, such deployment (or at least the threat thereof) has become almost commonplace. Chicago, the third-largest city in the U.S., is now the fifth major American city in which the President has attempted to

deploy the National Guard in as many months. Each incursion is unwarranted; and each transgresses further into normalizing the deployment of the military for domestic law enforcement efforts. This cannot stand in principle or law.

It follows then that *amici* are alarmed that the President could issue an order seeking to federalize troops at *anytime*, *anywhere*, *for any reason*—based on nothing more than being a disfavored jurisdiction. The President has even attempted to resurrect concern about long-managed protests to justify the invasion of one state's national guard into another. Indeed, during the temporary restraining order hearing before the district court, appellants argued that the federalization of the National Guard requires no explanation, identifiable scope, or provable factual underpinning, and that federalization determinations are immune from Article III review. *See* Appellees' Response in Opp. at 2, ECF 7 (citing to transcript). In their view, the President may call the National Guard whenever he is "unable to ensure to his satisfaction the faithful execution of the federal laws by the federal officers who regularly enforce them, without undue harm or risk to officers." N.D. Il. Dkt., Opinion and Order on Pls.' Request for TRO (hereinafter, "Order"), ECF 70 at 42. As the

district court noted, this near limitless view of the President's authority is "shockingly broad." *Id.*

*Amici* emphasize that unwarranted military policing dramatically increases the risk of irreparable injury. Military troops patrolling our communities inflames tensions, endangers and decreases the efficacy of local law enforcement, and increases risks of tragic accidents. And it disturbs our residents' peace and well-being and disrupts our local businesses and economies—all while costing millions of dollars.[7] This is especially true where, as here, military troops are deployed on city streets with a muddled directive to both clean up general crime, N.D. Il. Dkt., ECF 13, Ex. 9 (Gaber Decl.) ¶ 44, and to go "hard" against protesters, N.D. Ill. Dkt., ECF 1 ¶¶ 113-114,[8] none of which is necessary. Yet, the President federalized hundreds of members of the National Guard with

---

[7] Marc Novicoff, *A Very, Very Expensive Way to Reduce Crime*, The Atlantic (Oct. 10, 2025), https://perma.cc/26MD-YWFQ.

[8] *Id.* ("Defendant Noem was videotaped speaking to assembled DHS agents about protestors outside of the ICE facility in which she stated: 'Today, when we leave here we're going to go hard. We're going to hammer these guys....'").

no credible justification to do so, in order to send them into Illinois over the objection of state and local authorities.[9]

For these reasons and those below, the status quo before appellants' unlawful and pretextual military mobilization was decisively better for the public interest. This Court should deny appellants' request for a stay. *See Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006).

## ARGUMENT

## I.    APPELLANTS SEEK TO UNLAWFULLY UNLEASH MILITARY FORCES WITHOUT FACTUAL JUSTIFICATION AND UNDER PRETEXT THAT SEVERELY HARMS *AMICI* AND THE PUBLIC INTEREST.

The district court correctly concluded that a temporary restraining order is warranted. No legal authority or factual justification exists in this record for appellants to federalize and deploy the Texas and Illinois National Guard and invade a U.S. city. The public interest and the balance of equities support denying appellants' motion and allowing the district court's order to remain pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

---

[9] *See* Matt Masterson, *National Guard Troops Have Arrived in Illinois. What's Their Directive and Where Might They Be Deployed?* WTTW (Oct. 8, 2025), https://perma.cc/P8EP-SDHK.

6

In considering the public interest prong of the *Nken* stay standard, this Court should look to all who would be impacted by the requested stay pending appeal. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Here, *amici* represent a cross section of the public interest. They emphasize the serious harm that municipalities face when the National Guard is mobilized, without a request by the local or state government, based on inaccurate information and a sensationalizing of the facts. *See generally* Order at 9–11.

## A.    The Unlawful Federalization of the National Guard Without Justification Irreparably Harms State and Local Sovereignty.

A bedrock embodiment of state and local sovereignty over the police power is the steadfast refusal to allow the military to engage in domestic policing. *See Laird v. Tatum*, 408 U.S. 1, 15–16 (1972). Appellants' federalization of the National Guard shatters that legal tradition. In so doing, appellants likely cause irreparable harm to appellees' sovereignty and threaten that harm to other localities nationwide. Order at 49. By deploying members of the Texas National Guard to Illinois, appellants continue their relentless effort to dismantle the balance of power allocated by the U.S. Constitution not only between the States and the

7

federal government, but also among the States themselves. *Id.* (finding

that the principle of equal sovereignty is violated when the National

Guard from Texas is "deployed to Illinois against the wishes of Illinois's

elected leaders" because such a move "empowers Texas at the expense of

Illinois, injuring Illinois's right to be 'equal in power, dignity, and

authority' to every other state") (quoting *Coyle v. Smith*, 221 U.S. 559,

567 (1911)).

Moreover, by deploying the National Guard without meeting the

clear statutory thresholds required, appellants trample on the

foundational principles forbidding federal military involvement in

civilian law enforcement. Worse still, this drastic measure is seemingly

animated by pretext and misinformation. The President has provided a

variety of justifications for the deployment of the National Guard[10]—

---

[10] *See, e.g.*, Order at 6 (describing the request Illinois received to deploy the National Guard in order to "protect federal personnel and property at the ICE Processing Center"), *but see* Order at 44 (noting the President's social media posts decrying crime in Chicago as akin to a war zone); *see also* Motion for TRO, N.D. Ill. ECF 13, at 39 (noting: "The President has been threatening to deploy federal troops in the Chicago area for years without regard to the facts on the ground and with a mix of justifications ranging from 'crime' to Illinois's so-called 'sanctuary' policies. The recent protests outside the ICE facility in Broadview are a transparent pretext for carrying out this long-desired, lawless show of unnecessary force.").

none of which qualify as rebellion or unrest that would turn lawful this latest in a series of unprecedented military deployments across the country. *See,* e.g., Pls.' Motion for TRO, N.D. Ill. ECF No. 13, at 15 ("The crowd of protestors has typically been fewer than fifty people"). Indeed, as the district court noted, appellants' argument that the President's judgment requires such deference as to be beyond judicial review is not borne out by the plain text of the statute. Section 12406 "permits the President to federalize the National Guard '[w]henever' one of the three enumerated conditions are met, not whenever *he determines* that one of them is met." Order at 26 (quoting *Newsom v. Trump*, 786 F. Supp. 3d 1235, 1248 (N.D. Cal. 2025) (quoting 10 U.S.C. § 12406) (emphasis in original)).

*Amici* urge this Court to consider the distinct and irreparable injury that local governments nationwide suffer from when the President unlawfully deploys military forces on our streets. The National Guard's management of local protests usurps local government's constitutional interest to provide for the general welfare of their residents through their police power. *See*, *e.g.*, *San Francisco v. Trump*, No. 3:25-cv-01350-WHO, 2025 WL 1282637, at *22 (N.D. Cal. May 3, 2025) (citing *San Francisco*

9

*v. Trump*, 897 F.3d 1225, 1234–36 (9th Cir. 2018)). Appellants are undermining "localities' right to sovereignty and self-determination [that] forms the bedrock of our republic." *Id.* And this federal intrusion "diminish[es] the accountability" of federal officials by "put[ting] [state and local governments] in the position of taking the blame for its burdensomeness and for its defects." *Printz v. United States*, 521 U.S. 898, 929–30 (1997). This infringement on local sovereignty weighs strongly against the public interest.

## B. The Public Interest Is Best Served When Local Law Enforcement, Not Federalized Military Forces, Exercise Their Police Powers to Ensure Public Safety and Manage Local Protests.

The vast majority of protests across the United States are peaceful.[11] In the rare circumstances when demonstrations threaten public safety, local law enforcement is better trained than military forces to handle such incidents. Here, the district court detailed just how competently local law enforcement officers have managed crowds, First Amendment activity (including large scale protests), and the ability of

---

[11] *See, e.g.*, Demonstrations and Political Violence in America: New Data for Summer 2020, ACLED (Sept. 3, 2020), https://perma.cc/8VD5-Z9D4 (finding 93% of national demonstrations—in 2,400 locations—were peaceful).

10

ICE officers to enter and exit the Broadview ICE facility in the normal course of business. *See* Order at 3–9. By contrast, the district court noted that appellants' declarants have a "troubling" tendency to "equat[e] protests with riots and a lack of appreciation for the wide spectrum that exists between citizens who are observing, questioning, and criticizing their government, and those who are obstructing, assaulting, or doing violence." *Id*. at 10–11.

Unlike the National Guard, which secures combat and natural disaster zones, local law enforcement has extensive experience managing protests and deep understanding of their communities. *Amici*, like appellees, have established procedures and training that endeavor to balance public safety, individual rights, the protection of property, crowd management, and the preservation of residents' fundamental constitutional rights. *See also Grider v. Abramson*, 180 F.3d 739, 751–53 (6th Cir. 1999) (local governments have "significant public interests in fostering the privileges of free expression and assembly" and in "the preservation of community peace").

Law enforcement agencies across the country have devoted significant time to community engagement with the aim of building the

11

public's trust. As a result, local law enforcement best understands which tactics might escalate a situation in a particular community and what might be more useful in calming that same community. These tactics are not window-dressing; they succeed in deescalating serious conflicts.[12] Military troops with no local orientation lack these critical insights. As the district court concluded, "[t]o add to this milieu militarized actors unfamiliar with local history and context whose goal is 'vigorous enforcement' of the law… is not in the community's interest." Order at 50–51 (cleaned up).

And to the extent necessary, at an operational level, local governments like *amici* and appellees have established policies and procedures for coordinating responses to significant emergencies and civil unrest when local resources prove to be insufficient. They allow local governments to request additional state and local resources in a practiced manner that will avoid interagency conflicts, deescalate tensions, and prevent widespread disorder. *See, e.g.,* Order at 5, 6 (describing the

---

[12] Pittsburgh Bureau of Police Roadway Safety Guidelines (July 26, 2018), https://perma.cc/WB57-5TJP*; see also* City of New Haven, Press Release, *Statement by Mayor Elicker on Yale University Students Protests and Successful De-escalation by the New Haven Police Dep't* (Apr. 23, 2024), https://perma.cc/897J-HJCV.

Illinois law enforcement mutual aid network, and "Unified Command"). Centralized information-sharing and coordination of responses within these groups avoids putting the public or law enforcement at risk, without the need for any military forces. As the district court concluded, "Defendants have made no attempt to rely on the regular forces before resorting to federalization of the National Guard, nor do Defendants argue (nor is there any evidence to suggest) that the President is incapable with the regular forces of executing the laws." *Id.* at 38.

Deploying military troops outside of established processes also heightens the likelihood of coordination failures and introduces more complexity and risk for local law enforcement and the public. This is particularly true where appellants deploy the National Guard in response to what has been described as a small protest, rarely numbering more than fifty protestors. *See id.* at 3, 49. On the day before the President's announcement of a deployment, Broadview Police monitored a "small crowd of quiet protestors" against whom ICE deployed tear gas, pepper spray, and pepper balls. *Id.* at 5–6.

Indeed, as the district court noted, their deployment itself is "likely to lead to civil unrest, requiring deployment of state and local resources

to maintain order. *Id*. at 49. Further, in Chicago, as some federal agents have become increasingly aggressive in their response to protestors, Chicago police officers have faced increasing on-the-job dangers, not just from rising tensions, but also because of the tactics used by the federal agents themselves. For instance, Chicago police were recently tear gassed alongside protestors they were protecting when ICE agents deployed the gas.[13] And this is not unique to City appellee; in fact, it is an established pattern that repeats. *See* Br. of Cal. and Gov. Newsom as *Amici Curiae*, N.D. Ill. ECF 40–1 at 6 (pointing out that, rather than quelling unrest, National Guard mobilization inflamed further protests in Los Angeles, including spawning new unrest that required more state resources).[14]

The tactics used by federal law enforcement on local residents have already created significant costs for appellees. *See* Pls.' Motion for TRO,

---

[13] Billal Rahman, *ICE Accidentally Tear Gases Chicago Police During Clash With Protesters*, Newsweek (Oct. 6, 2025), https://perma.cc/CU3A-YWUK.

[14] *See also* Anna Griffin, *In 2020, Trump Intervened in Portland's Protests. They Got Even Worse*, N.Y. Times (Oct. 7, 2025), https://perma.cc/A7Z7-9LG2 (noting that during the 2020 protests after George Floyd's death, an influx of federal troops to Portland prompted "tens of thousands of people" to protest).

ECF 13, at 48. And the deployment of the National Guard is likely to increase these costs. *Id.* The district court noted the "provocative nature of ICE's enforcement activity" has caused a corresponding uptick in protests, which state and local law enforcement agencies respond to. *See* Order at 49–50. The resulting "diversion of limited state and local resources is an irreparable harm." *Id.* at 50; s*ee also cf. Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020) (finding irreparable harm because government officials "will lose the discretion … to allocate scarce resources among different county operations necessary to fight the pandemic"). *Amici*, like appellees, manage limited local resources, and share appellees' desire to avoid unnecessary expenditures and strain on local law enforcement.

## C.    Actual and Threatened Militarization of Our Cities Disturbs Our Residents' Well-Being and Our Local Economies.

Federal military presence, when deployed without cause, damages *amici*'s communities psychologically and economically. Far from feeling safer, residents report that federal soldiers' occupancy of their cities

causes anxiety, disrupts community harmony, and damages the local economy.[15]

Internal documents suggest that federal military leaders are aware that appellants' actions are perceived as "leveraging fear," driving a "wedge between citizens and the military," and promoting a sense of "shame" among some troops and veterans.[16] Experts note that the presence of troops in neighborhoods increases individuals' perception of danger, not security.[17] Rather than strengthening trust, appellants threaten to unravel decades of work that *amici* have invested in building trust with our communities.

*Amici*'s local economies are also suffering. Like City appellee, *amici* represent local governments which depend on tax revenue generated by local businesses. *See* Pls.' Motion for TRO, ECF 13 at 48. Many *amici*

---

[15] Joshua Chapin, *Downtown DC Businesses Hope for Increased Foot Traffic After End To Federal Takeover*, ABC 7 News (Sept. 11, 2025), https://perma.cc/HGX5-G7RQ.

[16] Alex Horton, *National Guard Documents Show Public 'Fear,' Veterans 'Shame' Over D.C. Presence,* Wash. Post (Sept. 29, 2025) https://perma.cc/S5QX-8VNB.

[17] Ed White and Christopher L. Keller, *Trump's Push for More Troops in US Cities at Odds with Crime Stats*, Military Times (Aug. 29, 2025), https://perma.cc/2RVT-E7GK.

count tourism as a top generator of economic stability. Evidence shows that the military presence is deterring visitors,[18] and the National Guard in Washington D.C. and Los Angeles have caused abrupt declines in tourism.[19] Restaurants have also lost business;[20] and major community events have reduced attendance.[21] Moreover, the unnecessary deployment of federal law enforcement to City appellee has historically provoked heightened civil unrest, which can exacerbate economic losses.

Negative effects from the deployments are not confined, and surrounding communities also feel the effects. The fear and confusion caused by deployment in Los Angeles, for example, spilled over to

---

[18] Mimi Montgomery, *Trump Crackdown is Affecting D.C.'s Image and Tourism Numbers*, Axios D.C. (Aug. 29, 2025), https://perma.cc/CR64-X3JY.

[19] *D.C. v. Trump*, No. 25-civ-3005 (D.D.C. 2025), ECF 3-5, Schwalb Decl., ¶ 7, https://perma.cc/BZ7A-8LDW.

[20] Milton Guevara, *How National Guard Troops in D.C. Are Affecting Restaurants in the Capital*, Nat'l Public Radio (Sept. 1, 2025), https://perma.cc/6AU5-HENA.

[21] Andrea Sachs and Federica Cocco, *D.C. Tourism Was Already Struggling, Then the National Guard Arrived*, Wash. Post (Aug. 29, 2025), https://perma.cc/BRG6-4D7T.

17

neighboring Santa Ana, where a "large part of the community stays home in fear," depressing economic activity.[22]

Members of the National Guard are also residents of *amici*'s communities. They hold jobs, raise their families, and contribute to *amici*'s social fabric. Many deployed Guard members are missing family milestones and work, all while expressing shame about their present mission.[23] Hundreds of members of the National Guard have left their families and local communities to travel hundreds of miles for an unlawful mission in and around Chicago. They are spending days and weeks now held at a government facility awaiting a version of the facts that the district court, after a thorough review of the record, found to be "inaccurate" and based on "unreliable information." Order at 9-11. At the same time, taxpayers are paying the massive price of these

---

[22] *Immigration Raids and Military Presence Hurting Economy in Santa Ana, Employees Say*, ABC 7 (June 11, 2025), https://perma.cc/NFP8-7E3B.

[23] *Supra* n.16.

deployments—approximately $400 million for D.C., $134 million for Los Angeles, and an initial estimate of $10 million for Oregon.[24]

*Amici*, representing millions of Americans, have a fundamental interest in ensuring that these unnecessary deployments cease and that the rule of law is restored.

## CONCLUSION

The public interest overwhelmingly supports maintaining the status quo, and this Court should deny appellants' emergency motion for a stay pending appeal.

Dated:  October 12, 2025

Respectfully submitted,

*/s/ Jonathan B. Miller*

JENNY MA
JONATHAN B. MILLER
JEAN LARSEN
PUBLIC RIGHTS PROJECT
490 43rd Street, #115
Oakland, CA 94609
Telephone: (510) 738-6788

*Attorneys for Amici Curiae*

---

[24] Noah Robertson, *LA Deployments to Cost $134 Million and Last 60 days, Pentagon Says,* Military Times (June 10, 2025), https://perma.cc/2N6D-ZPWH; Andrew Schwartz, *National Guard Deployment—Estimated Cost: $10 Million—Crawls Along*, Willamette Week (Oct. 1, 2025), https://perma.cc/Z9X8-ZX8W; Melody Gutierrez, *Trump's Military Deployment in L.A. Cost $120 Million, Newsom Says*, LA Times (Sept. 4, 2025), https://perma.cc/H3FE-E9FC; *Supra* n.7.

# ADDITIONAL COUNSEL

YIBIN SHEN
City Attorney
2263 Santa Clara Avenue, Room
    280
Alameda, CA 94501
*Attorney for the City of Alameda,*
    *California*

LAUREN KEEFE
City Attorney of Albuquerque
One Civic Plaza, 4th Floor
Albuquerque, NM 87102
*Attorney for the City of*
    *Albuquerque, New Mexico*

CHERAN IVERY
City Attorney
301 King Street, Suite 1300
Alexandria, VA 22314
*Attorney for the City of*
    *Alexandria, Virginia*

ROSALYN GUY-MCCORKLE
Allegheny County Solicitor
445 Fort Pitt Boulevard,
    Suite 300
Pittsburgh, PA 15219
*Attorney for County of Allegheny,*
    *Pennsylvania*

ATLEEN KAUR
City Attorney
Guy C. Larcom City Hall
301 East Huron, 3rd Floor
Ann Arbor, MI 48104
*Attorney for the City of Ann*
    *Arbor, Michigan*

EBONY M. THOMPSON
City Solicitor
Baltimore City Department of
    Law
100 North Holliday Street
Baltimore, MD 21202
*Attorney for the City of*
    *Baltimore, Maryland*

ADAM CEDERBAUM
Corporation Counsel
One City Hall Square, Room 615
Boston, MA 02201
*Attorney for the City of Boston,*
    *Massachusetts*

JESSICA C. BROWN
City Attorney
Office of City Attorney &
    Corporation Counsel
149 Church Street
Burlington, VT 05401
*Attorney for the City of*
    *Burlington, Vermont*

MEGAN BAYER
City Solicitor
795 Massachusetts Avenue
Cambridge, MA 02139
*Attorney for the City of*
*    Cambridge, Massachusetts*

CARLOS PABELLON
Corporation Counsel
DAVID R. GAULT
Deputy Corporation Counsel
Room 419, City-County Building
210 Martin Luther King, Jr.,
    Boulevard
Madison, WI 53703
*Attorneys for County of Dane,*
*    Wisconsin*

MIKO BROWN
City Attorney
1437 Bannock Street, Room 353
Denver, CO 80202
*Attorney for the City and County*
*    of Denver, Colorado*

LEESA MANION
Prosecuting Attorney
Chinook Building
401 5th Avenue, Suite 800
Seattle, WA 98104
*Prosecuting Attorney for Martin*
*    Luther King, Jr. County,*
*    Washington*

DAWN MCINTOSH
City Attorney
411 West Ocean Boulevard, 9th
    Floor
Long Beach, CA 90802
*Attorney for the City of Long*
*    Beach, California*

HYDEE FELDSTEIN SOTO
City Attorney
200 North Main Street, 8th Floor
Los Angeles, CA 90012
*Attorney for the City of Los*
*    Angeles, California*

JUDY W. WHITEHURST
Chief Deputy
LILIANA CAMPOS
Assistant County Counsel
BRIGIT GREESON ALVAREZ
Deputy County Counsel
648 Kenneth Hahn Hall of
    Administration
500 West Temple Street
Los Angeles, CA 90012-2713
*Attorneys for the County of Los*
*    Angeles*

MICHAEL HAAS
City Attorney
210 Martin Luther King Jr.
    Blvd., Room 401
Madison, WI 53703
*Attorney for the City of Madison,*
*    Wisconsin*

21

KRISTYN ANDERSON
City Attorney
350 South 5th Street
Minneapolis, MN 55415
*Attorney for the City of*
*    Minneapolis, Minnesota*

JOHN P. MARKOVS
Montgomery County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850
*Attorney for Montgomery County,*
*    Maryland*

JENNY MADKOUR
County Attorney
501 Southeast Hawthorne
    Boulevard, Suite 500
Portland, OR 97214
*Attorney for Multnomah County,*
*    Oregon*

PATRICIA KING
Corporation Counsel
165 Church Street
New Haven, CT 06510
*Attorney for the City of New*
*    Haven, Connecticut*

MURIEL GOODE-TRUFANT
Corporation Counsel
100 Church Street
New York, NY 10007
*Attorney for the City of New*
*    York, New York*

RYAN RICHARDSON
City Attorney
One Frank H. Ogawa Plaza, 6th
    Floor
Oakland, CA 94612
*Attorney for the City of Oakland,*
*    California*

LAURA CONOVER
County Attorney
Pima County Attorney's Office
32 North Stone Avenue
Tucson, AZ 85745
*Attorney for Pima County,*
*    Arizona*

KRYSIA KUBIAK
City Solicitor and Chief Legal
    Officer
414 Grant Street
Pittsburgh, PA 15219
*Attorney for the City of*
*    Pittsburgh, Pennsylvania*

ROBERT TAYLOR
City Attorney
1221 Southwest Fourth Avenue,
    Room 430
Portland, OR 97204
*Attorney for the City of Portland,*
*    Oregon*

PATRICK BEATH
Corporation Counsel
30 Church Street, Room 400A
Rochester, New York 14614
*Attorney for the City of Rochester,*
*    New York*

22

SUSANA ALCALA WOOD
City Attorney
915 I Street, 4th Floor
Sacramento, CA 95814
*Attorney for City of Sacramento,*
*California*

LYNDSEY M. OLSON
City Attorney
400 City Hall & Court House
15 West Kellogg Boulevard
St. Paul, MN 55102
*Attorney for the City of St. Paul,*
*Minnesota*

HEATHER FERBERT
San Diego City Attorney
1200 3rd Avenue, Suite 1100
San Diego, CA 92101
*Attorney for the City of San*
*Diego, California*

NORA FRIMANN
City Attorney
200 East Santa Clara Street,
16th Floor
San José, CA 95113
*Attorney for the City of San José,*
*California*

TONY LOPRESTI
County Counsel
70 West Hedding Street East
Wing, 9th Floor
San José, CA 95110
*Attorney for County of Santa*
*Clara, California*

JOHN D. NIBBELIN
County Counsel
400 County Center, 6th Floor
Redwood City, CA 94063
*Attorney for San Mateo County,*
*California*

HEIDI VON TONGELN
Interim City Attorney
1685 Main Street, Room 310
Santa Monica, CA 90401
*Attorney for the City of Santa*
*Monica, California*

DAVID CHIU
City Attorney
City Hall Room 234
One Dr. Carlton B. Goodlett
Place
San Francisco, CA 94102
*Attorney for the City and County*
*of San Francisco, California*

LAUREN LANGER
City Attorney
Best Best & Krieger LLP
300 South Grand Avenue,
25th Floor
Los Angeles, CA 90071
*Attorney for City of West*
*Hollywood, California*

23

## Appendix A – List of *Amici Curiae*

### Local Governments

City of Alameda, California

City of Albuquerque, New Mexico

City of Alexandria, Virginia

Allegheny County, Pennsylvania

City of Anaheim, California

City of Ann Arbor, Michigan

City of Baltimore, Maryland

City of Boston, Massachusetts

City of Burlington, Vermont

City of Cambridge, Massachusetts

Dane County, Wisconsin

City and County of Denver, Colorado

City of Evanston, Illinois

King County, Washington

City of Long Beach, California

City of Los Angeles, California

Los Angeles County, California

City of Madison, Wisconsin

City of Minneapolis, Minnesota

Montgomery County, Maryland

Multnomah County, Oregon

City of Newark, New Jersey

City of New Haven, Connecticut

City of New York, New York

City of Oakland, California

Pima County, Arizona

City of Pittsburgh, Pennsylvania

City of Portland, Oregon

City of Rochester, New York

City of Sacramento, California

City of St. Paul, Minnesota

City of San Diego, California

City of San José, California

County of Santa Clara, California

San Mateo County, California

City of Santa Monica, California

City and County of San Francisco, California

Sonoma County, California

City of West Hollywood, California

**Local Government Leaders**

Luis Alejo
*Supervisor, County of Monterey, California*

Valarie Bachelor
*School Board Director, City of Oakland, California*

Jorge Baron
*Councilmember, King County, Washington*

Ravinder Bhalla
*Mayor, City of Hoboken, New Jersey*

Andy Brown
*Judge, Travis County, Texas*

Jesse Brown
*Councilmember, City of Indianapolis, Indiana*

Xouhoa Bowen
*Vice Mayor, City of San Leandro, California*

Chelsea Byers
*Mayor, City of West Hollywood, California*

Barb Byrum
*Clerk, Ingham County, Michigan*

26

Chris Canales
*Councilmember, City of El Paso, Texas*

Michael Chameides
*Supervisor, County of Columbia, New York*

John Clark
*Mayor, Town of Ridgway, Colorado*

Laura Conover
*County Attorney, County of Pima, Arizona*

Christine Corrado
*Councilmember, Township of Brighton, New York*

Olgy Diaz
*Councilmember, City of Tacoma, Washington*

Roger Dickinson
*Councilmember, City of Sacramento, California*

Michael Dougherty
*20th Judicial District Attorney, Boulder, Colorado*

Justin Douglas
*Commissioner, Dauphin County, Pennsylvania*

Diane Ellis-Marseglia
*Commissioner, Bucks County, Pennsylvania*

Marilyn Ezzy Ashcraft
*Mayor, City of Alameda, California*

Ramin Fatehi
*Commonwealth's Attorney, City of Norfolk, Virginia*

Bryan "Bubba" Fish
*Councilmember, City of Culver City, California*

Vanessa Fuentes
*Mayor Pro Tem, City of Austin, Texas*

Brenda Gadd
*Councilmember, Metropolitan Nashville & Davidson County, Tennessee*

Adrian Garcia
*Commissioner, County of Harris, Texas*

Heidi Garrido
*Councilmember, City of Hopkins, Minnesota*

Delia Garza
*County Counsel, Travis County, Texas*

José Garza
*District Attorney, Travis County, Texas*

Megan Green
*President of Board of Alderman, St. Louis County, Missouri*

Jonathan Guzmán
*School Committee Vice-Chair, City of Lawrence, Massachusetts*

Beau Harbin
*Legislator, County of Cortland, New York*

28

Robert J. Harvie
*Commissioner, Bucks County, Pennsylvania*

Jani Hitchen
*Councilmember, County of Pierce County, Washington*

Stephanie Howse-Jones
*Councilmember, City of Cleveland, Ohio*

Susan Hughes-Smith
*Legislator, County of Monroe, New York*

Christopher Jaramillo
*Norristown Area School District Board President,*
*County of Montgomery, Pennsylvania*

Lisa Kaplan
*Councilmember, City of Sacramento, California*

Lisa Lawitzke
*Clerk, Township of Bellevue, Michigan*

Jessie Lopez
*Councilmember, City of Santa Ana, California*

Kim Lund
*Mayor, City of Bellingham, Washington*

Christian Menefee
*County Attorney, Harris County, Texas*

William Moehle
*Supervisor, Town of Brighton, New York*

Steve Mulroy
*District Attorney, County of Shelby, Tennessee*

Arnetta Murray
*Councilmember, City of Iowa Colony, Texas*

Linda Mussmann
*Supervisor, City of Hudson, New York*

Jonathan Nieuwsma
*Councilmember, City of Evanston, Illinois*

Isabel Piedmont-Smith
*Councilmember, City of Bloomington, Illinois*

Veronica Pillar
*Legislator, Tompkins County, New York*

Jacqueline "Jack" Porter
*Commissioner, City of Tallahassee, Florida*

Delishia Porterfield
*Councilmember, Metropolitan Nashville & Davidson County, Tennessee*

Satya Rhodes-Conway
*Mayor, City of Madison, Wisconsin*

Ryan Richardson
*City Attorney, City of Oakland, California*

Amanda Rodriguez
*Councilmember, City of San Marcos, Texas*

Rossana Rodríguez Sánchez
*Alderperson, City of Chicago, Illinois*

Miguel Sanchez
*Councilmember, City of Providence, Rhode Island*

Dawn Marie Sass
*Clerk/Deputy Treasurer, City of Exeter, Wisconsin*

Eli Savit
*Prosecuting Attorney, Washtenaw County, Michigan*

Seema Singh
*Councilmember, City of Knoxville, Tennessee*

David Stout
*Commissioner, City of El Paso, Texas*

Lena Tam
*Supervisor, County of Alameda, California*

Terry Vo
*Councilmember, Metropolitan Nashville & Davidson County, Tennessee*

Braxton White
*Commissioner, County of Clarion, Pennsylvania*

Robin Wilt
*Councilmember, Township of Brighton, New York*

31

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 29 and Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook font, and complies with Circuit Rule 29 in that the brief contains 3,636 words.

By: */s/ Jonathan B. Miller*
Jonathan B. Miller

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 12, 2025, I electronically filed the foregoing Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that the other participants in this appeal are CM/ECF users, and thus will be served via the CM/ECF system.

By: */s/ Jonathan B. Miller*
Jonathan B. Miller