No. 25-2798

# In the United States Court of Appeals for the Seventh Circuit

STATE OF ILLINOIS and CITY OF CHICAGO,
PLAINTIFFS-APPELLEES,
*v.*
DONALD J. TRUMP, *et al.*,
DEFENDANTS-APPELLANTS.

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

**BRIEF OF AMERICA FIRST LEGAL FOUNDATION
AS *AMICUS CURIAE* IN SUPPORT OF DONALD J. TRUMP,
ET AL., DEFENDANTS-APPELLANTS**

R. TRENT MCCOTTER
NICHOLAS A. CORDOVA
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202.706.5488
tmccotter@boydengray.com

GENE HAMILTON
AMERICA FIRST LEGAL
FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003

Counsel for *Amicus Curiae*

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus Curiae* states that it has no parent companies, and no publicly-held company has a 10% or greater ownership interest in it.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii
IDENTITY AND INTEREST OF *AMICUS CURIAE* ........................... 1
SUMMARY OF ARGUMENT .............................................................. 2
ARGUMENT ......................................................................................... 2
I. The Federal Government Is Likely to Succeed on the Merits ............ 2
   A. Plaintiffs' Claims Are Nonjusticiable .......................................... 2
   B. Plaintiffs' Section 12406 Ultra Vires Claim Is Improper Under Recent Supreme Court Precedent .................................... 5
   C. The President Acted Properly Under Section 12406 .................. 7
   D. The District Court's Tenth Amendment Analysis Makes Little Sense ............................................................................... 10
II. The Remaining Factors Favor the Federal Government ................... 11
CONCLUSION ................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Foreign Serv. Ass'n v. Trump*,
   No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) .................. 5

*Arizona Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ........................................................ 12

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ......................................................................... 6

*Newsom v. Trump*,
   141 F.4th 1032 (9th Cir. 2025) ............................................... 8, 10, 11

*Nken v. Holder*,
   556 U.S. 418 (2009) ....................................................................... 12

*NRC v. Texas*,
   605 U.S. 665 (2025) ......................................................................... 6

*Railway Clerks v. Association for Benefit of Non-Contract Employees*,
   380 U.S. 650 (1965) ......................................................................... 6

*Sterling v. Constantin*,
   287 U.S. 378 (1932) ......................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................ 2, 12

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ....................................................................... 12

**Constitution and Statutes**

U.S. Const. art. I, § 8, cl. 15 ............................................................ 3, 10

10 U.S.C. § 12406 ................................................... 2, 3, 4, 5, 6, 7, 8, 9

**Other Authorities**

Presidential Memorandum, *Department of War Security for the Protection of Federal Personnel and Property in Illinois*, The White House (October 6, 2025), https://perma.cc/RD8Y-HD8B ......................................................... 4

Asal Rezael, et al., *Broadview ICE Facility Protest Draws Hundreds, Several Arrested*, CBS Chicago (updated Oct. 3, 2025), https://perma.cc/QS9M-63VC ................................................. 9

Sophie Sherry, *Chicago Police Didn't Refuse to Help When Called by Federal Agents During Protest, Supt. Snelling Says*, Chicago Sun Times (Oct. 6, 2025), https://perma.cc/8BLP-YWNX ........................................................... 9

# IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution and federal statutes. As part of *Amicus*'s commitment to the rule of law, it seeks to ensure that the President is not unlawfully prevented from exercising his authority to carry out federal law.

---

[1] No person other than *amicus curiae* and their counsel assisted with or made a monetary contribution for preparing or submitting this brief. *Amicus* has sought leave to file this brief.

## SUMMARY OF THE ARGUMENT

This Court should grant a stay pending appeal because (1) Plaintiffs' claims are nonjusticiable; (2) even if they were justiciable, Section 12406 expressly authorizes the Presidential action that Plaintiffs seek to restrain and enjoin; and (3) the balance of harms and public interest favor the Federal Government.

## ARGUMENT

A plaintiff seeking a preliminary injunction or TRO "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that [emergency relief] is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs made none of these showings yet were awarded a TRO anyway. The Federal Government is likely to prevail on appeal, and accordingly this Court should grant a stay.

### I. The Federal Government Is Likely to Succeed on the Merits

#### A. Plaintiffs' Claims Are Nonjusticiable

Plaintiffs have asserted nine claims, each of which is a variation on the same underlying request for the federal courts to second-guess the

President's determination that the conditions for federalizing the National Guard have been satisfied here. There is no express private cause of action to bring these claims, and for nearly 200 years the Supreme Court has recognized that the President's determination is nonjusticiable. The Constitution assigns to Congress and the President the power to determine when to call the National Guard to federal service, and that determination is not reviewable in court.

Under the Constitution, the states (including Plaintiff Illinois representing its political subdivision, the City of Chicago) fully ceded to Congress their power to "provide for calling forth the Militia to execute the Laws of the Union." U.S. Const. art. I, § 8, cl. 15. Congress delegated portions of that power to the President, who is "Commander in Chief … of the Militia of the several States, when called into the actual service of the United States," *id.* art. II, 2, cl. 1, by enacting 10 U.S.C. § 12406.

Section 12406 expressly authorizes the President to federalize "units of the National Guard of any State in such numbers as he considers necessary" when he finds that any one of three conditions is present. *Id.* Here, the President determined that the third condition is present in Illinois and particularly Chicago, namely that "the President is unable

3

with the regular forces to execute the laws of the United States." *Id.*; Presidential Memorandum, *Department of War Security for the Protection of Federal Personnel and Property in Illinois*, The White House (October 6, 2025), https://perma.cc/RD8Y-HD8B.

That determination is nonjusticiable because, as the Supreme Court held in *Martin v. Mott*, once Congress has authorized the President to call forth the militia when certain exigencies are present, "the authority to decide whether the exigency has arisen, belongs exclusively to the President, and that his decision is conclusive upon all other persons." 25 U.S. (12 Wheat.) 19, 30 (1827). Plaintiffs creatively packaged their request for an injunction against the President's determination in nine different boxes, *see* ECF No. 1, but all invited the district court (and this Court on appeal) to violate *Mott* by purporting to review and invalidate a decision that Supreme Court precedent has held is assigned to the political branches.

The district court recognized *Mott*'s holding but dismissed it, suggesting the Supreme Court did not really mean what it said and had issued only "a reaction to the challenger seeking review." Dist. Ct. Op. 28. But Supreme Court opinions and holdings are not tickets good for one

ride only. The rationale and holding in *Martin* still apply—and they preclude judicial review here.

### B. Plaintiffs' Section 12406 *Ultra Vires* Claim Is Improper Under Recent Supreme Court Precedent

Plaintiffs' *ultra vires* claims are nonjusticiable for the additional reason that there is no "*ultra vires*" cause of action to review Presidential determinations made under Section 12406.

At the threshold, "the President is not an agency," "[s]o it is unclear whether *ultra vires* review is available at all." *Am. Foreign Serv. Ass'n v. Trump*, No. 25-5184, 2025 WL 1742853, at *2 (D.C. Cir. June 20, 2025). That is because "an *ultra vires* action is a suit in equity, and courts generally lack authority to enjoin the President." *Id.* (citing authorities). "To be sure, the Supreme Court has assumed without deciding that some *ultra vires* claims may lie against presidential action. But it has held that 'such review is not available when the statute in question commits the decision to the discretion of the President.'" *Id.* There is no doubt that the relevant statute here does so.

In any event, the Supreme Court has "strictly limited nonstatutory ultra vires review," emphasizing last term that "it applies only" when the defendant "has taken action entirely 'in excess of [his] delegated powers

5

and contrary to a *specific prohibition*' in a statute." *NRC v. Texas*, 605 U.S. 665, 681 (2025) (citing *Railway Clerks v. Association for Benefit of Non-Contract Employees*, 380 U.S. 650, 660 (1965)) (emphasis original). *Ultra vires* review emphatically "does not apply simply because [the defendant] has arguably reached 'a conclusion which does not comport with the law.'" *Id.* (quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964)). If "a decision" is of the sort that is "within [the decisionmaker's] jurisdiction," *ultra vires* review is unavailable. *Railway Clerks*, 380 U.S. at 659 (describing *Leedom v. Kyne*, 358 U.S. 184 (1958)).

*Ultra vires* review is unavailable here because (1) there are no "specific prohibition[s]" in Section 12406, *NRC*, 605 U.S. at 681; (2) the President's decision to federalize members of the Illinois and Texas National Guard is exactly the type of decision that the statute contemplates; and (3) Plaintiffs are improperly attempting to "dress up a typical statutory-authority argument as an *ultra vires* claim," *id.* at 666.

Section 12406 speaks only in the affirmative. It provides that "the President may call into Federal service members and units of the National Guard of any State in such numbers as he considers necessary" "[w]henever" any of three conditions is present. 10 U.S.C. § 12406. No one

6

disputes that this provision gives the President power to federalize the National Guard under certain conditions, so federalization cannot be entirely in excess of the powers the statute confers or beyond the President's jurisdiction, even if none of the requisite conditions is present. Thus, courts cannot conduct *ultra vires* review of the President's invocation of Section 12406 to federalize the national guard by arguing that none of the requisite conditions is present.

C. **The President Acted Properly Under Section 12406**

Even if Plaintiffs' claims were justiciable, none was likely to succeed on the merits. *Amicus* focuses on the challenge under Section 12406 because it provides the underlying premise for all of Plaintiffs' claims.

The President acted properly under Section 12406. C*ontra* ECF No. 1 ¶¶ 211–18. Again, the statute expressly authorizes the President to federalize the National Guard when "the President is unable with the regular forces to execute the laws of the United States," 10 U.S.C. § 12406(3), and the President found that "the regular forces of the United States are not sufficient to ensure the laws of the United States are faithfully executed" in Chicago. Presidential Memorandum (October 6,

2025), https://perma.cc/RD8Y-HD8B. If the Court reviews that determination—despite *Mott* and the Constitution's commitment of the determination to Congress and the President—then the Court's review must be "especially deferential." *Newsom v. Trump*, 141 F.4th 1032, 1047 (9th Cir. 2025).[2]

Under that extraordinarily deferential review, events amply demonstrate that the regular forces of the United States are unable to execute the federal immigration laws in and around Chicago.[3] Chicago police records show that, when a Border Patrol agent called for police assistance around noon on September 27, reporting that about 30 agents were "surrounded by a large crowd of people," a dispatcher retorted that,

---

[2] In *Newsom*, a Ninth Circuit panel held that, *Mott* notwithstanding, Presidential determinations under Section 12406 are reviewable for "good faith" under a "highly deferential" standard that grants the determination a "presumption" of legality. 141 F.4th at 1050–51, 1040, 1047. That erroneous decision to depart from *Mott* relied on an out-of-context quote from *Sterling v. Constantin*, 287 U.S. 378 (1932), a case that addressed powers of the Governor of Texas, not the President and Congress relative to federal courts, and did not purport to modify *Mott*. 141 F.4th at 1050–51.

[3] Notably, 10 U.S.C. § 12406 contains no hint of any requirement that the President must identify specific laws that the regular forces are unable to execute, and Plaintiffs offered no authority for their contrary assertion. ECF No. 1, ¶¶ 212, 217.

8

on orders of the chief of patrol, "no units would respond." Sophie Sherry, *Chicago Police Didn't Refuse to Help When Called by Federal Agents During Protest, Supt. Snelling Says*, Chicago Sun Times (Oct. 6, 2025), https://perma.cc/8BLP-YWNX.

The Chicago Police Superintendent himself acknowledged that protesters are "breaking the law" by "follow[ing] or box[ing] in the vehicles of federal law enforcement agents." *Id.* And just within the last ten days, a crowd of up to 200 so-called protesters gathered at the front gate of the Broadview ICE facility, leading to several arrests, including two for aggravated battery to a police officer. Asal Rezael, et al., *Broadview ICE Facility Protest Draws Hundreds, Several Arrested*, CBS Chicago (updated Oct. 3, 2025), https://perma.cc/QS9M-63VC.

Surely the President may determine that regular federal officers are unable to execute federal laws in Chicago when even the Chicago Police Superintendent has acknowledged illegal obstruction of federal law enforcement. Accordingly, the district court erred by finding Plaintiffs were likely to succeed on their claim that the President's determination violates Section 12406 because "no factual circumstances satisfying any of [its] predicates are present in Illinois." ECF No. 1, ¶ 212.

### D. The District Court's Tenth Amendment Analysis Makes Little Sense.

The district court repeatedly invoked Illinois's purported Tenth Amendment interests, both on the merits and in the context of irreparable harm. Dist. Ct. Op. 18, 44, 47–49. But it makes little sense to categorize this dispute as implicating the Tenth Amendment or state sovereignty.

Under the Constitution, the states *fully* ceded to Congress their power to "provide for calling forth the Militia to execute the Laws of the Union." U.S. Const. art. I, § 8, cl. 15. "The Constitution assigns the power to 'call forth the Militia' to Congress, and Congress has delegated portions of that power to the President." *Newsom*, 141 F.4th at 1055. Accordingly, any presidential action calling forth the National Guard contrary to federal statute might implicate *Congress*'s powers, but it cannot be an offense against the *states*, which fully transferred their power to the federal government. It would be like states arguing a Tenth Amendment violation for alleged violations of statutes enacted pursuant to the Declare-War Clause, where states fully ceded their war powers to Congress, under whatever terms it chooses to set.

This was a critical misunderstanding of the balance of powers between the federal and state governments vis-à-vis militia activities, and it infected numerous aspects of the district court's opinion.

## II. The Remaining Factors Favor the Federal Government

Plaintiffs speculated below that deploying the National Guard to Chicago will injure Illinois's sovereignty, increase unrest rather than quell it, and depress business activities and tourism. ECF No. 1, ¶ 8. But the Ninth Circuit has already rejected similar claims from Los Angeles as "too speculative" and further recognized that any alleged sovereign harm "is, in essence, a merits argument" about whether the federalization was legal in the first place. *Newsom*, 141 F.4th at 1055.

Defendants are the ones who now face irreparable harm thanks to the lower court's TRO. The Federal Government has "an uncontested interest in the protection of federal agents and property and the faithful execution of law," and that interest is irreparably harmed by the violent and subversive acts of so-called protesters that drew the Chicago Police Superintendent's criticism and led the President to mobilize the National Guard. *Id.* at 1054.

Finally, the equities and public interest factors favor granting a stay. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The district court's TRO undermines the public's interest in protecting the Constitution's assignment to the federal political branches—not to the judiciary—of the power to determine whether to federalize the National Guard. In other words, there is strong public interest against the judiciary purporting to veto the President from "act[ing] pursuant to an express ... authorization of Congress." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). And that is all the more true where, as here, the district court had a scant record before it.

The public also has an interest in ensuring that so-called protesters do not hamper enforcement of federal immigration law. *Cf. Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[I]t would not be equitable or in the public's interest to allow the state ... to violate the requirements of federal law."). The Supreme Court has explained that the equities favor the government when an injunction unnecessarily imposes a "serious threat to national security." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32 (2008). The equities and public interest thus favor a stay of the TRO.

## CONCLUSION

The Court should grant the Federal Government a stay pending appeal of the district court's temporary restraining order.

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER
NICHOLAS A. CORDOVA
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202.706.5488
tmccotter@boydengray.com

GENE HAMILTON
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003

Counsel for *Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Fed. R. App. P. 29(a), 32(g)(1). This brief complies with Rule 29(a)(5) because it contains 2338 words.

/s/ R. Trent McCotter

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF filing system and that service will be accomplished using that system.

/s/ R. Trent McCotter